**E-Filed 7/27/06 **

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DAVID JAMES HOLSINGER,<br><br>               Plaintiff,<br><br>    v.<br><br>WOLPOFF & ABRAMSON, LLP et al.,<br><br>               Defendants. | Case Number C 05-02075 JF (PVT)<br><br>ORDER[1] (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE BONA FIDE ERROR DEFENSE |

Plaintiff David James Holsinger ("Holsinger") moves for summary judgment on his claims against Defendant Wolpoff & Abramson, LLP ("Wolpoff") and for partial summary judgment on the bona fide error defense asserted by Wolpoff. Wolpoff cross-moves for summary judgment. All motions are opposed. The Court heard oral argument on July 21, 2006, and for

---

[1] This disposition is not designated for publication and may not be cited.

the reasons set forth below the Court will grant in part and deny in part Wolpoff's motion for summary judgment, deny Holsinger's motion for summary judgment on his claims against Wolpoff, and grant in part and deny in part Holsinger's motion for partial summary judgment on the bona fide error defense asserted by Wolpoff.

## I. BACKGROUND

On May 20, 2005, Holsinger filed the original complaint in the instant action.  On February 22, 2006, Holsinger filed the First Amended Complaint ("FAC") against Defendants Wolpoff,  Phillip Joseph Brusseau ("Brusseau"), Neal  Jonathan Levitski ("Levitski"), and Matthew Paul Linkie ("Linkie").  On May 1, 2006, pursuant to the parties' stipulation, this Court dismissed the claims arising under the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 *et seq*., and all claims alleged against Defendants Brusseau, Levitski, and Linkie.  The only remaining claim is for violations of the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, alleged against Wolpoff.

On or about July 17, 2002, Holsinger incurred a financial obligation in the form of a revolving credit account issued by MBNA America Bank, N.A. ("MBNA").  *See* FAC ¶ 12; Answer ¶ 12.  Because this debt was incurred primarily for personal, family or household purposes, *id*., it satisfies the FDCPA's definition of "debt."[2]  On March 19, 2004, MBNA referred Holsinger's delinquent credit card account to Wolpoff.  Declaration of Ronald Canter in Support of Motion for Summary Judgment by Defendant Wolpoff & Abramson LLP ("Canter Decl.") ¶ 3.

On March 23, 2004, Wolpoff sent an initial collection letter to Holsinger for an unpaid balance of $16,445.83.  Canter Decl. Ex. B.  This letter was signed by Brusseau, an attorney

---

[2] 15 U.S.C.A. § 1692a (5) ("The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.").

Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1    formerly employed by Wolpoff, and bears the notice: "The above attorney personally requested

2    that this letter be sent after he/she reviewed relevant portions of our file for the limited purpose

3    of sending this letter." *Id*.; Declaration of Phillip Joseph Brusseau in Support of Motion for

4    Summary Judgment by Defendant Wolpoff & Abramson LLP ("Brusseau Decl.") ¶¶ 1, 4.  The

5    notes of Holsinger's account do not indicate that this letter was ever returned to Wolpoff as

6    undeliverable.  Canter Decl. ¶ 5.  Holsinger has testified that he does not recall having received

7    this letter.  Declaration of Tomio Narita in Support of Motion for Summary Judgment by

8    Defendant Wolpoff & Abramson LLP ("Narita Decl.") Ex. A p. 52.  However, he also testified

9    that this letter was addressed to his correct mailing address in Pescadero, California, and that he

10   has "occasionally encountered problems getting mail." *Id*. pp. 50, 54.

11         On August 3, 2004, MBNA advised Wolpoff that it had charged off Holsinger's account

12   and, because of this change in status, changed Holsinger's account number.[3]  Canter Decl. ¶ 6.

13   On August 18, 2004, MBNA advised Wolpoff to update Holsinger's address with an address in

14   Reston, Virginia.  *Id*. ¶ 7.  Holsinger has testified that this is his parents' former address, which

15   Holsinger has previously used as a mailing address.  Narita Decl. Ex. A pp. 45-46.  Holsinger

16   believes that the last time he used the Reston, Virginia address was in 2000. *Id*.

17         In August 2004, Linkie, an attorney and employee of Wolpoff, approved the

18   recommendation that Holsinger's account should be referred for arbitration and reviewed and

19   approved a National Arbitration Forum ("NAF") claim.  Declaration of Matthew Paul Linkie in

20   Support of Motion for Summary Judgment by Defendant Wolpoff & Abramson LLP ("Linkie

21   Decl.") ¶ 4; Canter Decl. Ex. C.  The NAF claim was signed by Linkie and Levitsky, another

22   attorney employed by Wolpoff.  Canter Decl. ¶ 8, Ex. C.  It seeks recovery of the debt in the

23   amount of $16,445.83, "interest of $482.56 as of the date of filing, and at 7.00% thereafter," and

24   "all arbitration fees incurred, Process of Service fees and Attorney Fees of $2466.87, if allowed

25   _____

26         [3] Holsinger objects to this evidence on the ground that it is hearsay.  The Court need not
27   rule on this objection at this time because none of its decisions rely on it.

28
     Case No. C 05-02075 JF (PVT)
     ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
     JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
     PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
     BONA FIDE ERROR DEFENSE
     (JFLC1)

1   by law, equaling 15% of the outstanding principal balance." *Id*. On August 18, 2004, Wolpoff

2   mailed the NAF claim to the Reston, Virginia address, but the claim was returned by the postal

3   service as undeliverable on October 1, 2004. Canter Decl. ¶¶ 9-10.

4           On November 23, 2004, Wolpoff mailed a letter to Holsinger at the Pescadero, California

5   address, signed by Brusseau, demanding the payment of $19,698.04. FAC Ex. 1. Holsinger has

6   testified that this is the first communication he recalls having received from Wolpoff. Plaintiff's

7   Motion for Summary Judgment, Ex. 6 p. 70.[4] A paralegal first recommended that this letter be

8   sent. Brusseau Decl. ¶ 5. Brusseau has testified that, although he reviewed the Holsinger file, he

9   nonetheless made a mistake in deciding to send the letter. *Id*. ¶¶ 5-6; Supplemental Declaration

10  of Tomio B. Narita in Support of Motion for Summary Judgment by Defendant Wolpoff &

11  Abramson, LLP ("Supp. Narita Decl.") Ex. A pp. 189-91.

12          Holsinger has testified that he believed that the November 23, 2004 letter was a mistake

13  because the letter did not include an account number and the amount requested did not match any

14  amount that was listed on his credit bureau report. *Id*. pp. 38-40. Accordingly, on December 7,

15  2004, Holsinger mailed a letter to Wolpoff disputing the debt in its entirety. Canter Decl. Ex. D.

16  Wolpoff mailed another copy of the NAF claim to Holsinger on December 13, 2004, and was

17  later notified that Holsinger received this copy of the claim. Canter Decl. ¶¶ 14-15. In January

18  2005, Brusseau sent a letter to Holsinger stating that the outstanding balance was $19,880.98,

19  indicating that MBNA had filed an arbitration proceeding against Holsinger, and offering to

20  settle the matter. *Id*. Ex. E. Holsinger did not respond to the letter sent in January 2005 because

21  he received it after he had filed for bankruptcy and therefore believed that he did not need to

22  respond. Plaintiff's Motion for Summary Judgment, Ex. 6 p. 74.

23

24

---

25          [4] Holsinger submitted exhibits attached to his Motion for Summary Judgment and
    Opposition to Defendant's Motion for Summary Judgment without supporting declarations.
26  Wolpoff has not objected to any of these exhibits. Accordingly, the Court will presume that, if
    asked, counsel for Holsinger would provide the necessary declarations.
27

                                                    4
28  Case No. C 05-02075 JF (PVT)
    ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
    JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
    PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
    BONA FIDE ERROR DEFENSE
    (JFLC1)

1

## II. LEGAL STANDARD

2    A motion for summary judgment should be granted if there is no genuine issue of

3 material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

4 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears

5 the initial burden of informing the Court of the basis for the motion and identifying the portions

6 of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

7 demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

8 317, 323 (1986).

9    If the moving party meets this initial burden, the burden shifts to the non-moving party to

10 present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

11 *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents

12 evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

13 party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49;

14 *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

15    "When the nonmoving party has the burden of proof at trial, the moving party need only

16 point out 'that there is an absence of evidence to support the nonmoving party's case.'"

17 *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477

18 U.S. 317, 325 (1986)).  Once the moving party meets this burden, the nonmoving party may not

19 rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that

20 there is a genuine issue for trial.  *Id*.

21    The standard applied to a motion seeking partial summary judgment is identical to the

22 standard applied to a motion seeking summary judgment of the entire case.  *Urantia Foundation*

23 *v. Maaherra*, 895 F.Supp. 1335, 1335 (D. Ariz. 1995).

24

25

26

27

28

Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

### III. DISCUSSION

Congress enacted the FDCPA in order to "'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (quoting S.Rep. No. 382, 95th Cong.2d Sess. 4, reprinted in1977 U.S.Code Cong. & Admin.News 1695, 1699). In the Ninth Circuit, "whether the initial communication violates the FDCPA depends on whether it is 'likely to deceive or mislead a hypothetical 'least sophisticated debtor.''" *Terran v. Kaplan*,  109 F.3d 1428, 1431-32 (9th Cir. 1997) (quoting *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir.1996) (quoting *Swanson*, 869 F.2d at 1225)). Under this standard, the Court must consider whether "the least sophisticated debtor would likely be misled by the notice." *Swanson*, 869 F.2d at 1225.

### 1.      Bona Fide Error Defense

Wolpoff has asserted the FDCPA's bona fide error defense in response to all of Holsinger's claims. Holsinger moves for summary adjudication of this issue, asking the Court to bar Wolpoff from asserting this defense. The FDCPA's bona fide error defense provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). Holsinger argues that Wolpoff's procedures are unlawful and that Wolpoff cannot present evidence supporting each of the elements of the bona fide error defense. In order to establish this affirmative defense, "a debt collector must show that: (1) the FDCPA violation was not intentional; (2) the FDCPA violation resulted from a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Id.* (citing *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005)).

Holsinger argues that Wolpoff's procedures for sending additional presuit letters are

6

inadequate.  Holsinger contends that it is Wolpoff's stated policy to send more than one presuit letter when a new address is found through skip-tracing.  However, this oversimplifies and misrepresents Wolpoff's policy, which is:

> When a new address is located through skip-tracing efforts, the Presuit 1 letter is automatically requested by the computer for an attorney to send to the new address.  In instances where a Presuit 1 letter has been returned undelivered and a presuit employee then makes telephone contact with the debtor at a new address, the presuit employee is instructed to request a new Presuit 1 letter directed to the new address.  Employees are monitored, audited and reviewed to insure that the Presuit 1 letter is requested where a new address is entered into the computer. W&A's computer program has been designed to require that an attorney review each file where a Presuit 1 letter was returned undelivered and there is a subsequent new contact and address added by the presuit employee.  This review is designed to insure that a Presuit 1 letter is sent to the new address after the file is reviewed by an attorney.

Plaintiff's Opposition Ex. 13, p. 14.  Holsinger also suggests that Wolpoff's procedures are inadequate because it "has no procedure in place to prominently show on each computer screen that a Presuit 1 letter has been sent" and it unreasonable to "[force] an attorney to comb through each and every notation in a 12-page collection log, rather than having one prominent notation on the top of each screen."  Plaintiff's Supp. Br., p. 6.  Holsinger cites no case authority that such a specific procedure is necessary to satisfy the reasonableness requirement.

Holsinger contends that Canter has admitted that it is Wolpoff's procedure "not to honor its own statement" when it "sends the debtor a second letter, with explicit language stating it will cease collecting, and verify the debt."  Plaintiff's Supp. Br. p. 7.  However, the portion of Canter's deposition testimony cited for this admission does not contain such an admission.  *See* Wilcox Decl. Ex. 2 pp. 126-28.  Holsinger also contends that it is Wolpoff's policy to allow a paralegal to reissue an arbitration demand without oversight by an attorney.  However, the portion of Brusseau's deposition testimony cited for this proposition includes only a statement that a paralegal *requested* that an arbitration demand be reissued.  *See id.* pp. 169-70.

Holsinger contends that Wolpoff's policy of "allow [ing] a suit to go forward" even after a debt is disputed violates the FDCPA.  Wolpoff's policy is:

> Where a debtor notifies W&A in writing within thirty (30) days that a debt is

7

> disputed, a "hold action" is added to the account. . . . A "hold action" insures that there are no further written or oral communication with the debtor, but does allow suit to go forward.

Plaintiff's Opposition Ex. 13, pp. 14-15. Holsinger cites no legal authority for its contention that allowing a suit "to go forward" while there is no communication with the debtor violates the FDCPA. Additionally, it is not clear from the policy what precisely is meant by allowing a suit "to go forward." Holsinger also suggests that Brusseau testified that "even if a 'Hold' had been placed on a file it would stop phone calls from being made to the customer, but would not stop an attorney from sending letters to the consumer." Plaintiff's Supp. Br. p. 9. Considering that Brusseau testified that he was uncertain as to Wolpoff's policy when there is a "hold" placed on a disputed arbitration claim, Brusseau's testimony is not conclusive evidence of Wolpoff's policy. *See* Wilcox Decl. Ex. 1 pp. 178-79.

While Wolpoff's procedures manual, the depositions of Brusseau, Linkie and Canter, and the depositions of Brusseau and Canter certainly are not conclusive evidence that Wolpoff maintained "procedures reasonably adapted to avoid any such error," they are enough to survive summary judgment. The district court for the Eastern District of Pennsylvania has held that "[t]he debt collector must have in place some ongoing policy that operates to detect, correct and prevent errors. An isolated, one-time action taken to avoid violations will not suffice." *Adams v. Law Offices of Stuckert & Yates*, 926 F.Supp. 521, 529 (E.D. Pa. 1996). In *Adams*, "an isolated action, such as the posting of a reminder next to a word processor," was "clearly insufficient to qualify for the good faith defense" and there was "no evidence here even to suggest that an attorney proofreads correspondence before it is sent to a debtor." *Id*. In the instant case, Wolpoff has presented evidence of more than an isolated action designed to prevent errors. *See, e.g.*, Plaintiff's Opposition Ex. 13, p. 11 ("Once the paralegal has completed a review of the account information, a recommendation is made by the paralegal to send the file to an attorney to authorize collection action. . . . The attorney reviews the client information in the file and, if appropriate, authorizes the sending of an initial collection letter."); Brusseau Decl. ¶ 3 ("In

8

Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

connection with my employment at the Wolpoff firm, I received comprehensive training on the

procedures utilized by the Wolpoff firm to avoid violations of the Fair Debt Collection Practices

Act.  As part of that training, I was instructed that before I send any communication to any

debtor, I must carefully review the contents of the file relating to that account, including the

account note history, in order to make an independent determination that the correspondence is

appropriate."); Linkie Decl. ¶ 3 (same); Canter Decl. ¶ 12 (similar); Supp. Narita Decl. Exs. A

and B.

Holsinger argues that a debt collector's procedures to avoid errors must include

rechecking mechanisms.  It is true that with respect to the Truth in Lending Act,[5] the Seventh

Circuit has held that "the procedures which Congress had in mind were to contain an extra

preventative step, a safety catch or a rechecking mechanism." *Mirabal v. General Motors*

*Acceptance Corp.*, 537 F.2d 871, 878 (7th Cir. 1976).  However, that court did not hold that

rechecking mechanisms were the only procedures that would satisfy the requirements of the

statute: "Congress left the exact nature of the preventative mechanism undefined. . . . We save

for future determination what procedures, other than rechecking, might also satisfy this

requirement." *Id*. at 878-79.  Moreover, it is possible to construe Wolpoff's manual, or at least

portions of the manual, as establishing rechecking procedures. *See, e.g.*, Plaintiff's Opposition

Ex. 13, p. 11.

Finally, Holsinger argues that the Wolpoff has not presented evidence that any of the

alleged violations, other than the mailing of the November 23, 2004 letter, resulted from a bona

fide mistake.  The Court agrees that the only violations as to which Wolpoff has presented

evidence of a mistake, in addition to evidence of policies, relate to the November 23, 2004 letter.

In particular, Wolpoff has not presented any evidence that the inclusion or amount of attorney's

fees resulted from a bona fide error.  Accordingly, the Court will grant Holsinger's partial motion

---

[5] "Section 1692k(c) of the Act is nearly identical to the bona fide error defense section
under the Truth in Lending Act (TILA), 15 U.S.C. s 1640(c)." *Baker*, 677 F.2d at 779.

9

Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1   for summary judgment with respect to this alleged violation, thus barring Wolpoff from asserting

2   the bona fide error defense with respect to its collection of attorney's fees.

3         The Court notes that Wolpoff has not presented evidence that its continued collection

4   efforts and collection of 7.00% interest resulted from bona fide error. However, because it will

5   grant summary judgment for Wolpoff with respect to both of these alleged violations for the

6   reasons described below, the Court will deny Holsinger's partial motion for summary judgment

7   with respect to these alleged violations.

8         Wolpoff has presented evidence that Brusseau's mailing of the November 23, 2004 letter

9   may have resulted from a bona fide mistake. *See, e.g.*, Brusseau Decl. ¶ 6. As Holsinger argues,

10   the bona fide error defense does not apply to all mistakes. Holsinger cites *Newman v. Checkrite*

11   *California, Inc.*, 912 F.Supp. 1354, 1373 (E.D.Cal. 1995) for the proposition that in *Baker v.*

12   *G.C. Services Corp.*, 677 F.2d 775 (9th Cir.1982), the Ninth Circuit "held that the statutory

13   defense provided in § 1692k(c) is only intended to protect against clerical errors." However, as a

14   court in this district has held, "[t]his is not the precise the holding of *Baker*. . . . The court noted

15   that the [Truth In Lending Act] bona fide error defense only excuses errors of a clerical nature,

16   then goes on to conclude that the FDCPA bona fide error defense does not apply to errors of

17   law." *Palmer v. I.C. Systems, Inc.*, 2005 WL 3001877, *7 (N.D. Cal. 2005). In *Baker*, the

18   appellant "only presented evidence that, at best, might show it had been mistaken about the law."

19   *Baker*, 677 F.2d at 779. In *Palmer*, the court held that to have "introduced an error by assigning

20   an erroneous principal amount or invalid client charges" was a factual error. *Palmer*, 2005 WL

21   3001877, *7. Holsinger argues that Brusseau's alleged mistake in sending the November 23,

22   2004 letter, if a mistake, was a mistake of legal judgment. However, assuming *arguendo* that

23   sending the letter was a mistake, it is not clear from the facts whether the mistake was an

24   inadvertent mistake akin to a clerical error or if it was a mistake of law. As described by

25   Brusseau in his declaration, it appears that, while the mistake occurred while Brusseau performed

26

27

28

10

Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

his review in his position as an attorney, the mistake was one of inadvertence:[6]

> I made an error when I decided to send the November 23, 2004 letter to Holsinger. I inadvertently failed to notice that the initial demand letter that I previously sent to Holsinger on March 23, 2004, had been sent to his correct address at P.O. Box 824, Pescadero, California 94060, and that the letter was never returned by the postal service to the Wolpoff firm as undeliverable. If I had noticed the entries in the file, I would have known that there was no need to send another initial demand letter to Holsinger, and I would not have done so.

Brusseau Decl. ¶ 6. Accordingly, the Court will deny Holsinger's partial motion for summary judgment that Wolpoff may not assert the bona fide error defense with respect to the mailing of the November 23, 2004 letter.

**1.      November 23, 2004 Letter**

Holsinger moves for summary adjudication that Wolpoff's November 23, 2004 letter violated provisions of the FDCPA. In addition to disputing the merits of each of these violations, Wolpoff opposes Holsinger's motion for summary judgment with respect to the November 23, 2004 letter on the basis that the letter was sent as a result of a bona fide error. For the reasons set forth above, this Court concludes that Wolpoff has identified sufficient evidence from which a reasonable jury could conclude that Wolpoff maintained "procedures reasonably adapted to avoid any such error." Wolpoff has also presented evidence from which a trier of fact could find that Brusseau's decision to send the November 23, 2004 was the result of a bona fide error. *See* Brusseau Decl. ¶ 6; Supp. Narita Decl. Ex. A. Accordingly, because Wolpoff may be able to assert the bona fide error defense with respect to the November 23, 2004, the Court will deny Holsinger's motion for summary judgment to the extent that it relates to this letter.

Wolpoff cross-moves for summary judgment with respect to the November 23, 2004

---

[6] Inadvertence alone is insufficient to establish the bona fide error defense; it must be paired with demonstration of procedures designed to prevent errors. *See Dutton v. Wolhar*, 809 F.Supp. 1130, 1138 (D. Del. 1992) ("Where defendants maintain 'extensive systems' designed to prevent errors, the unintentional violation of the Act will not result in liability. Mere inadvertency is not sufficient to provide a defense. Defendant has the burden of demonstrating the maintenance of such procedures.").

letter on multiple grounds.  Wolpoff seeks summary judgment that the letter was sent as a bona

fide error.  As the Court has concluded, there is a triable issue of fact as to whether this defense

will shield Wolpoff from potential liability under the FDCPA with respect to this letter.  Wolpoff

has presented evidence from which a trier of fact could find that the letter was sent as a bona fide

error.  However, Brusseau's own declaration and testimony that the error was inadvertent are not

conclusive evidence that the error was bona fide.  Accordingly, the Court will deny Wolpoff's

motion for summary judgment on this ground.  The Court considers the merits of each of

Wolpoff's alternative grounds for summary judgment on claims based on this letter below.

### a. Attorney Review, Section 1692e(3)

Section 1692e(3) provides that "[t]he false representation or implication that any

individual is an attorney or that any communication is from an attorney" is a violation of the

FDCPA.  15 U.S.C. § 1692e(3).  The November 23, 2004 was signed by Brusseau.  FAC Ex. 1.

Brusseau has stated in his declaration and during his deposition testimony that he reviewed

Holsinger's file prior to sending this letter.  *See* Brusseau Decl. ¶ 5; Supp. Narita Decl. Ex A p.

165.  During oral argument, counsel for Holsinger conceded that, following Brusseau's

deposition, the question of whether Brusseau had reviewed the file before sending the November

23, 2004 letter was no longer at issue.  Accordingly, the Court will grant Wolpoff's motion for

summary judgment as to this claim.

### b. Amount of Debt, Section 1692f(1)

Section 1692f(1) provides that "[t]he collection of any amount (including any interest,

fee, charge, or expense incidental to the principal obligation) unless such amount is expressly

authorized by the agreement creating the debt or permitted by law" is a violation of the FDCPA.

15 U.S.C. § 1692f(1).  Wolpoff moves for summary judgment on Holsinger's claim under

Section 1692f(1) with respect to the November 23, 2004 letter on the ground that the amount it

sought to collect was correct value of Holsinger's debt.

Holsinger argues that the inclusion of  $2,466.87, fifteen percent of the unpaid balance of

12

Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1   $16,445.83, for attorney's fees is unreasonable as a matter of law because these attorney's fees

2   were not expressly authorized by Holsinger's agreement with MBNA.  The account agreement,

3   which is governed by Delaware law, provides:

> If you default, unless prohibited by applicable law, we can also require you to pay
> the collection and court costs we incur in any collection proceeding, and a
> *reasonable attorney's fee* if we refer your account for collection to an attorney
> who is not our salaried employee.

7   Plaintiff's Motion for Summary Judgment, Ex. 9 p. 100005 (emphasis added).

8          The cases cited by Holsinger are factually distinguishable from the instant case and thus

9   do not support a conclusion that the attempt to collect $2,466.87 was unreasonable as a matter of

10  law.  The Eighth Circuit's decision in *Kojetin v. C U Recovery, Inc.*, 212 F.3d 1318 (8th Cir.

11  2000) (per curium), applied to the fees levied in connection with the collection of the debt, not

12  with the litigation or arbitration of the debt.  *Id.* ("[W]e agree with the district court's conclusion

13  that CUR violated the FDCPA when it charged Kojetin *a collection fee* based on a percentage of

14  the principal balance that remained due rather than the actual cost of the collection.") (emphasis

15  added).  The district court for Western District of Michigan concluded in *Stolicker v. Muller*,

16  2005 WL 2180481, *4 (W.D. Mich. 2005), that "[t]he inclusion of a liquidated sum as attorney

17  fees with the principal debt owed altered the terms of the contract between Capital One and

18  Stolicker and violated the FDCPA."  However, in that case, the alleged violation of the FDCPA

19  was "that by filing an affidavit in support of the default judgment stating that the claim was 'for a

20  sum certain or for a sum which by computation can be made certain,' the Muller law firm

21  violated the FDCPA."  *Id.* at * 3.

22         Holsinger also argues that the requested attorney's fees are not permitted under Delaware

23  law.  Delaware law provides that in an action involving "any note, bond, mechanics lien,

24  mortgage, invoice or other instrument of writing," a plaintiff that recovers a judgment "may also

25  recover reasonable counsel fees," which shall not "exceed 20 percent of the amount adjudged for

26  principal and interest."  10 Del. Code § 3912.  First, Holsinger contends that the requested

27

28
Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1   attorney's fees are unreasonable because Wolpoff has not provided evidence that would justify

2   the amount of fees requested.  However, Holsinger provides no authority that would support such

3   a conclusion.  Second, Holsinger contends that the indication that the fifteen percent fee was

4   added to the Holsinger account on March 19, 2004, the first day that the account was referred

5   from MBNA and before any litigation or arbitration activity had begun, shows that the fee is

6   unreasonable.  *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment

7   ("Plaintiff's Opposition"), Ex. 12 p. 9.  However, the March 23, 2004 collection letter asked only

8   for the unpaid balance of $16,445.83 and did not seek attorney's fees.  Canter Decl. Ex. B.  It

9   was not until after the preparation of the NAF claim that Wolpoff asked for attorney's fees in its

10  November 23, 2005 letter.  The mere fact that Wolpoff entered the fee into the account notes

11  prior to performing litigation or arbitration activities is not conclusive evidence that the fee is

12  unreasonable.

13          Wolpoff argues that its request for attorney's fees did not violate the FDCPA because the

14  account agreement expressly provided for fees and the amount requested was within the bounds

15  permitted by Delaware law.  However, Holsinger has presented evidence, including the timing of

16  the entry of the fee amount into the account notes and the amount of the fee itself, from which a

17  trier of fact could find that the attorney's fees requested were not reasonable.  Accordingly, this is

18  an issue of fact and cannot be decided on summary judgment.

19          Wolpoff also contends that, because disputes arising under Holsinger's account

20  agreement would be subject to arbitration, this Court does not have jurisdiction to determine the

21  reasonableness of the attorney's fees sought.  However, the purpose of this Court's inquiry is not

22  to make a binding determination as to the amount of attorney's fees, if any, Holsinger owes to

23  Wolpoff.  Rather, this Court must consider this issue in order to determine whether Wolpoff's

24  payment demand, which includes attorney's fees, was itself reasonable.

25          Holsinger also argues that Wolpoff's failure to itemize the debt in the November 23, 2004

26  letter, thereby failing to disclose that the sum sought included an attorney's fee, is a violation of

27

28
Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1   Sections 1692e(2), 1692e(10), and 1692f(1).  Although none of these sections expressly requires

2   the debt collector to itemize the debt or indicate that a sum includes an attorney's fee, the

3   Seventh Circuit has required debt collectors to identify attorney's fees:

4         Even if attorneys' fees are authorized by contract, as in this case, and even if the
          fees are reasonable, debt collectors must still clearly and fairly communicate
5         information about the amount of the debt to debtors. This includes how the total
          amount due was determined if the demand for payment includes add-on expenses
6         like attorneys' fees or collection costs.

7   *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004) (holding that the allegations

8   were sufficient to state a claim under § 1692e and § 1692f.  A trier of fact could find that the

9   failure to identify the attorney's fees in the November 23, 2004 letter could be misleading to the

10  least sophisticated consumer.

11        Accordingly, the Court will deny Wolpoff's motion for summary judgment on this claim.

12      ***c. False Representation of the Debt, § 1692e(2)(A)***

13        Wolpoff moves for summary judgment on Holsinger's claim that the November 23, 2004

14  letter violates Section 1692e(2)(A), which bars a debt collector from falsely representing "the

15  character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  Having concluded that

16  a trier of fact could find that the failure to identify attorney's fees in the November 23, 2004 letter

17  could be misleading and that the amount of the attorney's fees could be unreasonable, the Court

18  will deny Wolpoff's motion for summary judgment on this claim.

19      ***d. Amount of Debt in Initial Communication, 1692g(a)(1)***

20        Section 1692g(a)(1) provides that "[w]ithin five days after the initial communication with

21  a consumer in connection with the collection of any debt, a debt collector shall, unless the

22  following information is contained in the initial communication or the consumer has paid the

23  debt, send the consumer a written notice containing–(1) the amount of the debt."  15 U.S.C. §

24  1692g(a)(1).  Holsinger claims that the November 23, 2004 letter violates this section because it

25  "failed to disclose the true amount of the debt being collected."  FAC ¶ 67(e).  Wolpoff moves

26  for summary judgment on this claim, arguing that the November 23, 2004 letter was not its first

27

28  15
Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

communication with Holsinger and that it did disclose the true amount of the debt.

The common law Mailbox Rule provides that "'proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee.'" *Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999) (quoting *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir.1992)). The Ninth Circuit has held "that section 1692g(a) requires only that a Notice be 'sent' by a debt collector" and that "[a] debt collector need not establish actual receipt by the debtor." *Id.* at 1201. In *Mahon*, the court held that the debtor's statements of non-receipt of a letter did not rebut the presumption, established by evidence of the debt collector's standard mailing procedures, that the letter had been sent. *Id.* at 1201-02. In the instant case, Wolpoff has presented evidence that it sent an initial collection letter to Holsinger for an unpaid balance of $16,445.83 on March 23, 2004, and that this letter was not returned as undeliverable. Canter Decl. ¶ 5 and Ex. B. Holsinger has testified that he does not recall having received this letter but that this letter was sent to his correct mailing address and that he has "occasionally encountered problems getting mail." Narita Decl. Ex. A pp. 50-54. As in *Mahon*, Holsinger's statements of non-receipt are not enough to overcome the presumption that the March 23, 2004 letter was sent.

In the alternative, Holsinger argues that, even if it is not the initial communication, the November 23, 2004 letter had to comply with Section 1692g(a)(1) because it included the Section 1692g(a)(1) validation disclosures. The Court agrees with Holsinger's argument that a debt collector must honor validation rights that are stated in any collection letter, without respect to whether that letter is the initial communication. However, there is no case authority that would require a debt collector to comply with Section 1692g(a)(1) when it sends any subsequent letter that includes validation rights. The district court for the District of Delaware has considered the issue of "whether a debt collector who undertakes to remind a consumer of some of his section 1692g rights in a subsequent communication is obligated to disclose all of the rights." *Higgins v. Capitol Credit Services, Inc.*, 762 F.Supp. 1128, 1134 (D. Del. 1991). That court held:

Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1

2    By disclosing some of plaintiff's rights in the April 12 notice, defendant went
     beyond the disclosure requirements of the FDCPA. The court will not penalize a
3    debt collector who discloses more than is required by the Act. One of the purposes
     of the disclosure requirement of section 1692g(a) is to ensure that consumers are
4    made aware of their rights with respect to debt collection activities. Restatement
     by a debt collector in correspondence subsequent to the initial communication of
5    some of the consumer's section 1692g(a) rights furthers this goal. The FDCPA
     was intended to prevent abusive debt collection practices. It was not intended to
6    penalize honest debt collectors. The court finds that defendant's reiteration of
     Higgins' rights under sections 1692g(a)(4) & (5) in the April 12 notice did not
7    violate the Act.

8    *Id*. at 1134-35. This Court similarly concludes that Wolpoff's inclusion of a validation notice in

9    the November 23, 2004 letter does not obligate it to comply with the requirements of Section

10   1692g(a).

11          Accordingly, the Court will grant summary judgment for Wolpoff on this claim.

12          ***e. 1692e(10)***

13          Wolpoff moves for summary judgment on Holsinger's claim that the November 23, 2004

14   letter violated Section 1692e(10), which provides that "[t]he use of any false representation or

15   deceptive means to collect or attempt to collect any debt or to obtain information concerning a

16   consumer" is a violation of the FDCPA. 15 U.S.C. § 1692e(10). Holsinger argues that this letter

17   violated Section 1692e(10) because it falsely stated that, if Holsinger disputed the debt, Wolpoff

18   would cease collection efforts until verification of the debt. Because the Court concludes below

19   that Wolpoff's December mailing of the NAF claim to Holsinger satisfied its obligation to verify

20   the debt, the Court concludes that the November 23, 2004 letter did not violate Section

21   1692e(10). Accordingly, the Court will grant Wolpoff's motion for summary judgment on this

22   claim.

23

24   **2.      NAF Claim & January 20, 2004 Letter**

25          Holsinger moves for summary adjudication that Wolpoff's NAF claim and Wolpoff's

26   January 20, 2004 letter violated provisions of the FDCPA. Wolpoff opposes Holsinger's motion

27   for summary judgment with respect to these letters, but does not assert the bona fide error

28   17
Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1    defense in opposition to these aspects of Holsinger's motion for summary judgment.  Wolpoff

2    cross-moves for summary judgment with respect to these letters.  The NAF claim, signed by

3    attorneys Linkie and Levitsky, seeks recovery of the debt in the amount of $16,445.83, "interest

4    of $482.56 as of the date of filing, and at 7.00% thereafter," and "all arbitration fees incurred,

5    Process of Service fees and Attorney Fees of $2466.87, if allowed by law, equaling 15% of the

6    outstanding principal balance."  Canter Decl. ¶ 8, Ex. C.  On August 18, 2004, Wolpoff mailed

7    the NAF claim to the Reston, Virginia address, but the claim was returned by the postal service

8    as undeliverable on October 1, 2004.  *Id.* ¶¶ 9-10.  Wolpoff mailed another copy of the NAF

9    claim to Holsinger on December 13, 2004, and was later notified that Holsinger received this

10   copy of the claim.  Canter Decl. ¶¶ 14-15.  In January 2005, Brusseau sent a letter to Holsinger

11   stating that the outstanding balance was $19,880.98, indicating that MBNA had filed an

12   arbitration proceeding against Holsinger, and offering to settle the matter.  *Id.* Ex. E.

13   ### *a. False Representation of and Amount of the Debt, §§ 1692e(2)(A) and 1692f(1)*

14   Section 1692e(2)(A) bars a debt collector from falsely representing "the character,

15   amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  Section 1692f(1) provides that

16   "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the

17   principal obligation) unless such amount is expressly authorized by the agreement creating the

18   debt or permitted by law" is a violation of the FDCPA.  15 U.S.C. § 1692f(1).  Wolpoff moves

19   for summary judgment on Holsinger's claim under Sections 1692e(2)(A) and 1692f(1) with

20   respect to the NAF claim and the January 20, 2005 letter on the ground that the amount Wolpoff

21   sought to collect was correct value of Holsinger's debt.  Holsinger argues that the attorney's fees

22   sought by Wolpoff were unreasonable as a matter of law.  Having concluded that a trier of fact

23   could find that the amount of the attorney's fees requested was unreasonable, the Court will deny

24   Wolpoff's motion for summary judgment with respect to these claims.

25   ### *b. Attorney Review, Section 1692e(3)*

26   Section 1692e(3) provides that "[t]he false representation or implication that any

27   individual is an attorney or that any communication is from an attorney" is a violation of the

28
Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1   FDCPA.  15 U.S.C. § 1692e(3).  During oral argument, counsel for Holsinger represented that

2   there is no longer any dispute with respect to whether the January 20, 2005 letter was reviewed

3   and signed by Brusseau or whether the NAF claim was reviewed and signed by Linkie.

4   Accordingly, the Court will grant Wolpoff's motion for summary judgment with respect to

5   Brusseau and Linkie.

6        Holsinger maintains his claim that the NAF claim was not reviewed by Levitsky.  Neither

7   party has submitted a declaration by or deposition testimony of Levitsky.  The only evidence

8   cited by Wolpoff is the identification of Levitsky as an attorney in Holsinger's complaint and

9   Holsinger's deposition testimony that, to the best of his knowledge, Levitsky is an attorney.  FAC

10   ¶ 9; Narita Decl. Ex. A pp. 48, 64.  Holsinger argues that there is evidence that Levitsky did not

11   review the file.  Brusseau has testified that there is an automatic entry or notation in the notes of

12   an account when an attorney affixes his or her signature to a document.  Declaration of Ronald

13   Wilcox, Ex. 1 p. 155.  Additionally, Canter's deposition testimony indicates that there is no

14   indication in the account notes that Levitsky worked on Holsinger's account.  *Id*. Ex. 2 p. 132.

15        The parties dispute whether the "meaningful involvement" doctrine used in other circuits,

16   requiring meaningful involvement by the attorney, is applicable in the Ninth Circuit.  *See, e.g.*,

17   *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 365 (2d Cir. 2005).  However,

18   considering the evidence with respect to Levitsky, this Court need not resolve the question of the

19   applicability of the "meaningful involvement" doctrine at this time.  Another court in this district

20   has held that  "Section 1692e(3) prohibits a debt collector from using an attorney's status to add

21   to the force of its collection letters, unless the attorney is actually involved in the collection effort

22   to the extent implied by the letter."  *Irwin v. Mascott*, 112 F. Supp. 2d 937, 948 (N.D. Cal. 2000).

23   "A debt collector violates this section of the FDCPA when a letter appears to be sent by an

24   attorney without the attorney's having both reviewed the debtor's file and gained some

25   knowledge about the specific debt."  *Id*. at 948-49.  Wolpoff has not presented evidence

26   sufficient to show that Levitsky reviewed Holsinger's file and gained knowledge about his debt.

27   Accordingly, the Court will deny Wolpoff's motion for summary judgment with respect to

28

19

Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1    Levitsky.[7]

2         ***c.  Interest Rate, Section 1692e(10)***

3         Holsinger moves for summary judgment on his claim that the NAF claim violated Section

4    1692e(10) by falsely representing the interest rate on the loan.  Section 1692e(10) provides that

5    "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt

6    or to obtain information concerning a consumer" is a violation of the FDCPA.  15 U.S.C. §

7    1692e(10).  Holsinger's account was subject to an adjustable interest rate.  Plaintiff's Opposition,

8    Ex. 9, p. 100004.  When Holsinger opened the account, the annual percentage rate was 9.99%

9    and in January, 2004 the rate was 9.24%.  *Id.* Ex. 9, p. 100004; *Id*. Ex. 8 p. 1.  The NAF claim

10   seeks recovery of the debt in the amount of $16,445.83, "interest of $482.56 as of the date of

11   filing, *and at 7.00% thereafter*."  Canter Decl. ¶ 8, Ex. C (emphasis added).

12        Holsinger argues that any statement that is literally false is a violation of the FDCPA.

13   The district court for Southern District of Ohio has noted that "[t]he Seventh Circuit concluded

14   that a literally false statement in a collection letter violates the FDCPA as a matter of law." *Kelly*

15   *v. Great Seneca Financial Corp.*, No. 04-615, 2005 U.S. Dist. LEXIS 40192 *16 (S.D. Ohio

16   June 16, 2005) (citing *Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996)).  However, the Seventh

17   Circuit's holding in *Avila* was not so broad.  Instead, that court held that statements in collection

18   letters, which were mass-produced form letters not reviewed by an attorney, were "more akin to a

19   literally false statement in the context of a trademark case" because "they are inconsistent and

20   contradictory."  *Avila*, 84 F.3d at 227.  The other case cited by Holsinger, *Lewis v. ACB Business*

21   *Services, Inc.*, 135 F.3d 389 (6th Cir. 1998), held that the use of an alias, although false, did not

22   violate the FDCPA because it was not deceptive.  Thus, Holsinger has provided no binding case

23   authority for his proposition that any literally false statement, without more, is a violation of the

24

25        [7] In Holsinger's Supplemental Brief, Holsinger requests summary judgment on the issue
26   of Levitsky's review of the NAF claim.  However, Holsinger did not move for summary
     judgment with respect to this issue; the Court will not grant summary judgment based on a
27   belated request in a supplemental brief.

28
     Case No. C 05-02075 JF (PVT)
     ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
     JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
     PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
     BONA FIDE ERROR DEFENSE
     (JFLC1)

1  FDCPA.

2       Additionally, Holsinger has provided no legal authority that would support a conclusion

3  that Wolpoff's collection of *less than* the stated interest rate is a violation of the FDCPA.

4  Because Holsinger would not be damaged by paying an interest rate less than the rate provided

5  for in his account agreement, there would be no viable claim for breach of contract.  *See, e.g.,*

6  *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal.App.4th 1375, 1391 (2004)

7  ("A cause of action for damages for breach of contract is comprised of the following elements:

8  (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

9  breach, and (4) *the resulting damages to plaintiff*.") (internal quotation omitted) (emphasis

10  added).  Accordingly, the Court will deny Holsinger's motion for summary judgment on this

11  claim.

12       ***d.  Continued Collection Efforts, Section 1692g(b)***

13       Holsinger and Wolpoff both move for summary judgment on Holsinger's claims that the

14  December mailing of the NAF claim and the January 20, 2005 letter violated Section 1692g(b),

15  which provides:

16       If the consumer notifies the debt collector in writing within the thirty-day period
         described in subsection (a) of this section that the debt, or any portion thereof, is
17       disputed, or that the consumer requests the name and address of the original
         creditor, the debt collector shall cease collection of the debt, or any disputed
18       portion thereof, until the debt collector obtains verification of the debt or a copy of
         a judgment, or the name and address of the original creditor, and a copy of such
19       verification or judgment, or name and address of the original creditor, is mailed to
         the consumer by the debt collector.

20

21  15 U.S.C. § 1692g(b).  On December 7, 2004, following his receipt of the November 23, 2004

22  letter, Holsinger mailed a letter to Wolpoff disputing the debt in its entirety.  Canter Decl. Ex. D.

23  On December 13, 2004, Wolpoff mailed a copy of the NAF claim to Holsinger.  *Id*. ¶ 14.  In

24  January 2005, Brusseau sent a letter to Holsinger stating that the outstanding balance was

25  $19,880.98, indicating that MBNA had filed an arbitration proceeding against Holsinger, and

26  offering to settle the matter.  *Id*. Ex. E.

27       The parties dispute whether the March 23, 2004 letter or the November 23, 2004 letter

28
21

Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1  was Wolpoff's initial communication with Holsinger.  The Court has concluded that the March

2  23, 2004 letter was the initial communication.  However, although the November 23, 2004 letter

3  did not need to comply with the requirements for an initial communication set forth in Section

4  1692g(a), this letter nevertheless included the following statement assuring Holsinger that

5  Wolpoff would verify the debt if he disputed it:

6  > If you notify us in writing within the thirty-day period described in subsection (a)
>  of this section that the debt, or any portion thereof, is disputed, or that you request
7  > the name and address of the original creditor, we shall cease collection of the debt,
>  or any disputed portion thereof, until we obtain verification of the debt or a copy
8  > of a judgment, or the name and address of the original creditor, and a copy of such
>  verification or judgment, or name and address of the original creditor, is mailed to
9  > you by us.

10  FAC Ex. 1.

11      Wolpoff argues that the December mailing of the NAF claim to Holsinger satisfied its

12  obligation to verify the debt.  Holsinger argues that the claim did not provide adequate

13  verification because the amount of the demand was incorrect for three reasons: (1) the amount

14  stated included interest only as of August 2004 not as of December 2004, (2) the interest rate was

15  incorrect, and (3) the attorney's fee requested was unreasonable.  As to the first reason, the NAF

16  claim and Summary of Account Information indicates interest in the amount of "$482.56 as of

17  the date of filing, and at 7.00% thereafter" and that the "date filed" was August 20, 2004.  Canter

18  Decl. Ex. C.  As to the second reason, Holsinger's argument fails for the reasons set forth above

19  with respect to the argument that Wolpoff falsely represented the interest rate on the loan.  As to

20  the third reason, even if the attorney fee requested was unreasonable, it was the fee that Wolpoff

21  sought.  "[V]erification of a debt involves nothing more than the debt collector confirming in

22  writing that the amount being demanded is what the creditor is *claiming* is owed."  *Chaudhry v.*

23  *Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (emphasis added).  "Consistent with the legislative

24  history, verification is only intended to 'eliminate the . . . problem of debt collectors dunning the

25  wrong person or attempting to collect debts which the consumer has already paid.'" *Id.* (citing

26  S.Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699).  Accordingly, the

27  Court concludes that Wolpoff's December mailing of the NAF claim to Holsinger satisfied its

28

22

Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1 | obligation to verify the debt.  The Court will grant Wolpoff's motion for summary judgment and

2 | deny Holsinger's motion for summary judgment with respect to these claims.

3

4 | **IV. ORDER**

5 | Good cause therefore appearing, IT IS HEREBY ORDERED that Wolpoff's motion for

6 | summary judgment will be GRANTED IN PART and DENIED IN PART, as discussed in detail

7 | above.  IT IS FURTHER ORDERED that Holsinger's motions for summary judgment on his

8 | claims against Wolpoff is DENIED and that Holsinger's motion for partial summary judgment

9 | on the bona fide error defense asserted by Wolpoff will be GRANTED IN PART and DENIED

10 | IN PART.[8]

11

12 | DATED:  July 27, 2006

13

14

15 | _____

16 | JEREMY FOGEL
   | United States District Judge

17

18

19

20

21

22

23

24 | [8] At oral argument, counsel indicated that, depending upon the disposition of the instant motions, the parties may be willing to waive their right to a jury trial with respect to the remaining issues and claims.  Counsel also raised concerns about the sufficiency of the time

25 | remaining for trial preparation.  On or before Wednesday August 2, 2006, counsel shall advise the Court as to whether they would prefer a bench or jury trial and as to whether the current trial

26 | date of August 25, 2006 is practicable.  The Court also strongly encourages counsel to revisit the

27 | possibility of settlement in light of this order.

23

28 | Case No. C 05-02075 JF (PVT)
ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
BONA FIDE ERROR DEFENSE
(JFLC1)

1    This Order has been served upon the following persons:

2    Tomio B. Narita                    tnarita@wsnlaw.com,

3    Frederick William Schwinn          cand_cmecf@sjconsumerlaw.com,
                                        fred.schwinn@sjconsumerlaw.com; fschwinn@gmail.com

4
5    Jeffrey A. Topor                   jtopor@wsnlaw.com,

6    Ronald Wilcox                      ronaldwilcox@post.harvard.edu

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                       24
28   Case No. C 05-02075 JF (PVT)
     ORDER (1) GRANTING IN PART AND DENYING IN PART WOLPOFF'S MOTION FOR SUMMARY
     JUDGMENT, (2) DENYING HOLSINGER'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN
     PART AND DENYING IN PART HOLSINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
     BONA FIDE ERROR DEFENSE
     (JFLC1)